## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LESROY E. BROWNE, *on behalf of himself and those similarly situated,* | Civil Action No. 2:22-cv-02713-KM-JSA |
| Plaintiff, | |
| vs. | **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST A/K/A NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST I, *et al.*, | |
| Defendants. | |

Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
ykim@kimlf.com

Scott C. Borison (admitted *pro hac vice*)
BORISON FIRM LLC
1400 S. Charles Street
Baltimore, Maryland 21230
Tel. (301) 620-1016
Fax. (302) 620-1018

Christina Henry (admitted *pro hac vice*)
HENRY & DEGRAFF, P.S.
787 Maynard Avenue S
Seattle, Washington 98104
Tel. (206) 330-0595
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**1   RELEVANT FACTS** ........................................................................................ 1

    1.1    The Trusts And the Defendants Who Act On Their Behalf Have No Knowledge Of Who Owns Browne's Student Loan ............................ 3

    1.2    License Problems ..................................................................................... 6

**2   ARGUMENT** ................................................................................................... 6

    2.1    Legal Standard ......................................................................................... 6

    2.2    Plaintiff Has Properly Pled Consumer Fraud Act Claims Under Rule 9(b) ......................................................................................................... 7

    2.3    Injuries Alleged Against the Defendant Trusts Include The Non-Trust Parties that Act on their Behalf Through Concerted Action and Contractual Agreements. ......................................................................... 9

    2.4    The Plaintiff's Factual Allegations Necessitate Suing All 15 Defendant Trusts .................................................................................... 12

    2.5    Defendants Unlawful Conduct Is Covered By the Consumer Fraud Act ........................................................................................................... 14

    2.6    Collecting A Void Unenforceable Debt While Concealing This Fact Is Conduct Prohibited By The Consumer Fraud Act ............................... 20

    2.7    Plaintiff Can Enforce The NJCFLA Against the Defendants ............ 29

            2.7.1  *The NJCFLA is Applicable to the Defendants* .......................... 29

            2.7.2  *Plaintiff Can Assert A Claim Based On The NJCFLA* .............. 31

    2.8    Plaintiff has Plead a Plausible Unjust Enrichment Claim ................... 32

    2.9    A Permanent Injunction Should be Granted ........................................ 34

    2.10  If Any Deficiency Exists, The Court Should Allow The Plaintiff Leave To Amend The Complaint ......................................................... 36

i

**3**      **CONCLUSION** ..............................................................................................**38**

## TABLE OF AUTHORITIES

### CASES

*Accountemps Div. of Robert Half, Inc. v. Birch Tree Grp., Ltd.*,
   115 N.J. 614 (1989)...................................................................................29

*Arroyo v. Stoneleigh Recovery Assocs., LLC*,
   2019 U.S. Dist. LEXIS 138287 (D.N.J. Aug. 14, 2019) .......................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................ 13, 36

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................36

*Bell Atlantic Corp. v. Twombly*
   550 US 544 (2007)................................................................ 7, 13, 36

*Boyko v. Am. Intern Group, Inc*.,
   No. 08-cv-2214, 2009 WL 5194431, at *4 (D.N.J. Dec. 23, 2009) ....................18

*Buell v. Experian Info. Sols., Inc.*,
   No. 1:22-cv-14-HAB, 2023 WL 3596357 (N.D. Ind. May 23, 2023)................35

*Burrell v. DFS Servs., LLC*,
   753 F. Supp. 2d 438 (D.N.J. 2010) .......................................................38

*Caprio v. Healthcare Revenue Recovery Grp., LLC*,
   709 F.3d 142 (3d Cir. 2013) .................................................................36

*Chulsky v. Hudson Law Offices, P.C.,*
   777 F. Supp. 2d 823 (D.N.J. 2011) .......................................................18

*Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*,
   575 F. Supp. 3d 505 (D. Del. 2021)......................................................11

*Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*,
   No. 1:17-cv-1323-SB, 2022 WL 548123 (D. Del. Feb. 11, 2022)......................11

*Conway v. CitiMortgage, Inc.*,
   438 S.W.3d 410 (Mo. 2014).................................................................. 17, 19

*Cox v. Sears Roebuck & Co.*,
   138 N.J. 2 (1994) ...................................................................................30

*DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman*,
   430 N. J. Super., 325 (App. Div. 2013) .................................................17

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) ...................................................................8

*Glassman v. Computervision Corp.*,
   90 F.3d 617 (1st Cir. 1996) ...................................................................38

*Gonzalez v. Wilshire Credit Corp.*,
   207 N.J. 557 (2011) ......................................................................... 15, 16

*Gottlieb v. JH Portfolio Debt Equities, LLC*,
   HUD-L-000382-22 (Law Div. Mar. 31, 2023) .....................................25

*Heyert v. Taddese*,
   431 N.J. Super. 388 (App. Div. 2013) ..................................................20

*In re Burlington Coat Factory Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ...............................................................37

*In re Nat'l Collegiate Student Loan Trusts Litig.*,
   251 A.3d 116 (Del. Ch. 2020) ................................................................9

*Insight Global, LLC v. Collabera, Inc.*,
   446 N.J. Super. 525 (Ch. Div. 2015).....................................................29

*Jackson v. Birmingham Bd.*,
   544 U.S. 167 (2005).............................................................................36

*Jefferson Loan Co., Inc. v. Session*,
   397 N.J. Super. 520, 938 A.2d 169 (Super. Ct. App. Div. 2008) ................... 16, 19

*Johnson v. City of Shelby*,
   135 S. Ct. 346 (2014)............................................................................8

*La Mar v. H&B Novelty & Loan Co.,*
 489 F.2d 461 (9th Cir. 1973) ...............................................................10

*Latteri v. Mayer*,
 2018 U.S. Dist. LEXIS 85926 (D.N.J. May 22, 2018) .........................22

*Lemelledo v. Beneficial Mgmt. Corp. of Am.,*
 150 N.J. 255 (1997) ...................................................................... 16, 20

*Lopez v. Law Offices of Faloni & Associates, LLC*,
 2016 U.S. Dist. LEXIS 124730 (D.N.J. Sept. 14, 2016) ......................22

*Macdonald v. Cashcall, Inc*.,
 333 F.R.D. 331 (D.N.J. 2019) ...............................................................20

*McMahon v. LVNV Funding, LLC*,
 744 F.3d 1010 (7th Cir. 2014) ..............................................................35

*McQueen v. Fein, Such, Kahn & Shepard, P.C.*,
 ESX-L-1439-22, 2023 N.J. Super. Unpub. LEXIS 640 (Law Div. April 26, 2023)
 ................................................................................................. 25, 26, 28

*Morganroth & Morganroth v. Norris, McLaughlin*,
 331 F.3d 406 (3d Cir. 2003) ..................................................................37

*N.J. Carpenters v. Tishman Constr. Corp.*,
 760 F.3d 297 (3d Cir. 2014) ..................................................................36

*Nami v. Fauver*
 82 F.3d 63 (3rd Cir. 1996) ............................................................. 7, 14

*New Century Fin. v. Trewin*,
 2018 N.J. Super. Unpub. LEXIS 1688 (Ch. Div. May 24, 2018) .........24

*North v. Portfolio Recovery Assocs., LLC*,
 No. 2:20-cv-20190 (BRM) (JSA), 2021 U.S. Dist. LEXIS 18497414-15 (D.N.J.
 Sep. 24, 2021) ........................................................................... 7, 20, 22

*Peralta v. Ragan*,
 2022 U.S. Dist. LEXIS 234300 (D.N.J. Dec. 30, 2022) .......................24

*Perez v. Rent A Center Inc.*,
    186 N.J. 188 (2006) ............................................................................................30

*Pierre-Charles v. Consumer Portfolio Servs.*,
    No. 17-cv-10025, 2018 WL 3425737 at *4 (D.N.J. July 16, 2018) ....................30

*Pollitt v. DRS Towing, LLC*,
    No. 10-1285, 2011 U.S. Dist. LEXIS 41825, 2011 WL 1466378 (D.N.J. Apr. 18,
    2011) ...................................................................................................................16

*Porter Mem. Hosp. v. Wozniak*,
    680 N.E.2d 13 (Ind. Ct. App. 1997)....................................................................35

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*,
    168 N.J. 255  (2001) ...........................................................................................31

*Rinaldo v. RLR Inv., LLC*,
    904 A.2d 725 (N.J. Super. Ct. App. Div. 2006) ............................................ 35, 36

*Rosenau v. Unifund Corp.*,
    539 F.3d 218 (3d Cir. 2008)................................................................................37

*Scibek v. Longette*,
    339 N.J. Super. 72 A.2d 1242 (A.D.2001)...........................................................15

*Spencer v. McCune*,
    126 N.E. 30 (Ind. Ct. App. 1920).........................................................................35

*Thieme v. Aucoin-Thieme*,
    227 N.J. 269 (2016) ............................................................................................34

*Tompkins v. Selip & Stylianou, LLP*,
    2019 U.S. Dist. LEXIS 21937 (D.N.J. Feb. 11, 2019) ........................................22

*Valentine v. Mullooly, Jeffrey, Rooney & Flynn LLP*,
    2022 U.S. Dist. LEXIS 118399 (D.N.J. July 6, 2022)........................................24

*Valentine v. Unifund CCR, Inc.*,
    2021 U.S. Dist. LEXIS 44747 (D.N.J. Mar. 10, 2021)........................................22

*Veras v. LVNV Funding, LLC*,
    2014 U.S. Dist. LEXIS 34176 (D.N.J. March 17, 2014)......................................21

*VRG Corp. v. GKN Realty Corp.*,
    641 A.2d 519 (N.J. 1994) ..................................................................................32

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010) ................................................................................37

*Warren Gen. Hosp. v. Amgen Inc.*,
    643 F.3d 77 (3d Cir. 2011) ................................................................................13

*Woo-Padva v. Midland Funding LLC*,
    2022 N.J. Super. Unpub. LEXIS 96 (N.J. Sup. Ct. Bergen Cty. Jan. 21, 2022)..22,
    25

*Yingst v. Novartis AG*,
    63 F. Supp. 3d 412 (D.N.J. 2014) .....................................................................32

*Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    No. 13–7738, 2015 WL 926221 (D.N.J. Mar. 4, 2015)........................................8

## STATUTES

15 U.S.C. § 1692e(8) ...............................................................................................36

N.J.S.A. 17:11C-3(a)................................................................................................20

N.J.S.A. 17:11C-3.....................................................................................................6

N.J.S.A. 17:11C-33(b) ................................................................................ 6, 21, 31, 33

N.J.S.A. 56:8–19 ......................................................................................................15

N.J.S.A. 56:8–2 .............................................................................................. 15, 16, 18

N.J.S.A. 56:8–2 ........................................................................................................19

## OTHER AUTHORITIES

Newberg and Rubenstein on Class Actions § 2:5 (6th ed.) .....................................10

Restatement (Third) of Restitution and Unjust Enrichment, § 18 (2011) ...............33

## RULES

Fed. R. Civ. P. 12(b)(6).................................................................................13

Fed. R. Civ. P. 8..........................................................................................8

Fed. R. Civ. P. 8(a)(2)...................................................................................8

Fed. R. Civ. P. 9(b)......................................................................................8

Plaintiff, by and through undersigned counsel, hereby request that the Court deny Transworld Systems Inc.'s ("TSI") motion to dismiss (ECF No. 43-1), the National Collegiate Student Loan Trusts' ("NCSLT") motion to dismiss (ECF. No. 44-1), Wilmington Trust Company ("Wilmington") motion to dismiss (ECF No. 45-1) and U.S. Bank, N.A.'s ("U.S. Bank") motion to dismiss (ECF No. 46-5).

## 1   RELEVANT FACTS

The Plaintiff files this class action complaint on his own behalf and a class consisting of other individuals that the Defendant Trusts have sought to collect from based on the Trusts' claims that it owns their loans. The Defendant Trusts have no employees. First Amended Complaint ("FAC") ¶ 39, 40, ECF No. 1-1. They act through a conglomerate of other entities that are named as Defendants in this case. FAC ¶ 40. It is the same as if the Plaintiff had included agents or individual employees working for a defendant entity for their actions on behalf of the entity. Since the Trusts only operate through the other defendant entities, it is necessary to include them all in a case seeking to enjoin the Trusts or be granted damages. Similarly, the Trusts could claim that the claim for damages should be directed at the other non-party entities since they may have collected or kept money collected from Plaintiff and other class members. Without naming all of its operatives, the Trusts could simply continue to engage through others in unfair, deceptive, and illegal methods to collect debts that are not owed to them. The

entities are named as Defendants because they act on behalf of the Trusts and would likely contest the enforceability of any orders or judgments entered against only the Trusts if they were not included as Defendants and given an opportunity to defend their actions. Indeed, as alleged in the First Amended Complaint, U.S. Bank has intervened in cases where it was not included as a defendant. FAC ¶¶ 42-44.

The Trusts are also operated as if they are a single entity. While servicing loans for the Defendant Trusts, American Education Services ("AES"), the servicer of Browne's loan, failed to identify any specific trust as the owner of his loan, instead noting "NCT" as the alleged owner of the loan in correspondence and in communications with credit reporting agencies. FAC ¶ 1. When Browne asked who owned his loan, AES informed him that NCT was the owner and provided an account history that also noted NCT as the owner of the loan. FAC ¶ 2. In a privacy disclosure notice sent to Browne for his loan, the owner is referred to as "NCSLT" which Browne later learned was shorthand for "National Collegiate Student Loan Trust," a generic name for the fifteen Trust Defendants. FAC ¶ 3. TSI, who allegedly collects defaulted loans on behalf of the Trusts, also uses the same acronyms, e.g., "NCT" and "NCSLT" in communications with borrowers and in reporting to consumer credit agencies. FAC ¶ 72.

Browne now believes that AES's statements were not accurate as it was not collecting for an owner of his Chase loan as none of the 15 statutory trusts can prove they are the assignee of his loan. FAC ¶ 3. Thus, Browne was forced to name *all* 15 statutory trusts as defendants in this lawsuit. *Id.* None of the Non-Trust parties alleged, prior to this lawsuit being filed, that any individual trust had any ownership interest in his loan. FAC ¶¶ 2-3. This lawsuit is not questioning which Defendant Trust that Browne may have owed money to for a loan made to him by Chase. Rather, it alleges that none of the Defendant Trusts are entitled to recover amounts Browne paid and thus all Trust Defendants are properly named in this lawsuit. FAC ¶ 3.

## 1.1   The Trusts And the Defendants Who Act On Their Behalf Have No Knowledge Of Who Owns Browne's Student Loan

The primary servicer for almost all of the loans, AES, was provided with the Original Credit Agreements for all loans but was not required to have anything else or be provided anything else. FAC ¶¶ 45-49. AES as a servicer was told what loan was allegedly held by what Trust but AES did not receive any assignments to support what it was told. AES did not have personal knowledge regarding any of the records. *Id*.

Before 2008, the Trust Defendants did not have a servicer for delinquent loans because The Education Resource Institute, Inc. ("TERI") was a guarantor and made full repayment on any loans that went into default. FAC ¶¶ 35-36. The

servicers were told what loan was held by which trust because they were being hired as a servicer to collect. FAC ¶ 49. A servicer's duties did not include investigating or verifying the ownership claims made by the Trusts. Thus, the servicer did not have any documents concerning alleged assignments of the loans it was hired to collect. FAC ¶ 45. Nor was the servicer provided support for claims as to which loan the Trust allegedly owned. FAC ¶¶ 49-50.

After TERI filed for bankruptcy in 2008 the guarantee arrangement fell apart. FAC ¶ 38 The servicer had to continue to service the loans on nothing more than the limited information it had been provided. FAC ¶¶ 45-49. All of the collectors rely on AES for their information. FAC ¶ 51. And suddenly, the servicer and collectors claim to have greater knowledge than they ever had. FAC ¶ 52. The Trusts also had to establish a process for servicing loans that went into default. FAC ¶ 45. That process required a new role for U.S. Bank, the Indenture Trustee for the Trusts, who became the Special Servicer for the loans with responsibility for the trusts and decision-making responsibilities for the collection actions pursued on behalf of the Trusts. FAC ¶¶ 41-43.

In turn, the Trusts, through others, entered into contractual agreements for subservicing of the loans with what became Transworld Systems, Inc. FAC ¶ 53. In its role, TSI relies on information from AES for the credit agreements, payment information, and other servicing information about the loan accounts. It has the

same information about the loans as AES. FAC ¶¶ 51-54. TSI, just like AES, lacks

proof to show the Defendant Trusts' ownership of any individual loan accounts.

They also do not know which Trust allegedly owns which individual loan. FAC ¶

51. The only information known about the assignment of loans to individual trusts

is the notation in AES that would merely "change the owner on its system upon

notification from [First Marblehead Corporation]" without any supporting

documentation. FAC ¶ 49. TSI lacks any knowledge about who owns the loans and

has the same flaws in its collection practices that AES has. FAC ¶¶ 49-53.

In the name of the Trusts, TSI uses documents that are prepared for litigation

and files them in court actions to support its claim that various Trusts own specific

loans. FAC ¶ 66. The primary documents that allegedly show the Trusts' interest in

any particular loan is a "Pool Supplement." FAC ¶ 66. The Pool Supplements state

the loans are set forth on a Schedule of Loans attached to each Pool Supplement

Agreement. *Id.* Since TSI does not have the Schedules, TSI adds a placeholder to

the Pool Supplements that claims that the listing of the loans being transferred are

on file with First Marblehead Corporation ("FMC"). *Id.* (FMC is the entity that

arranged the loan programs for originating banks that allegedly assigned them to

the 15 statutory trusts. FAC ¶¶ 32-36.)  The "placeholder" does not identify any

specific loans, so TSI adds an excerpt of an additional document that it attaches to

the Pool Supplement labeled a "roster." This is not a document included as part of the original Pool Supplement transferred from anyone to the Trusts. FAC ¶ 67.

## 1.2    License Problems

Even if somehow the Defendant Trusts are able to prove their assignee status, none has the right to collect from Browne and the class members since none of the Defendant Trusts first obtained a license to engage in business as a consumer lender or sale finance company as required by the New Jersey Consumer Finance Licensing Act (NJCFLA), at N.J.S.A. 17:11C-3. FAC ¶¶ 5, 80-83. Moreover, the loans became void and unenforceable as of the date the Defendant Trusts allegedly took assignment of them, pursuant to N.J.S.A. 17:11C-33(b). FAC ¶¶ 8, 92-93. Since the Defendant Trusts enforce their allegedly assigned accounts through servicing, collection, lawsuits and post-judgment collection efforts, the other defendants in this case are also liable for the Defendant Trusts' unlawful conduct and/or required to have a license. FAC ¶¶ 77-78. Thus, any attempts to collect by the Defendants against Browne and the other class members is not valid or enforceable. FAC ¶¶ 9, 95-96.

## 2    ARGUMENT

## 2.1    Legal Standard

Plaintiff's ability to prove his or her allegations, or possible difficulties in making such proof, is generally of no concern in ruling on a Rule 12(b)(6) motion:

"In considering a 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." *Nami v. Fauver* 82 F.3d 63, 65 (3rd Cir. 1996). Rule 12(b)(6) does not countenance "dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atlantic Corp. v. Twombly* 550 US 544, 556 (2007).

## 2.2   Plaintiff Has Properly Pled Consumer Fraud Act Claims Under Rule 9(b)

U.S. Bank and TSI claim that the Plaintiff has failed to state a claim under the CFA's heightened pleading standard under Rule 9(b) because it has not alleged sufficient claims against U.S. Bank specifically, does not allege which Defendant allegedly committed which action, and is conclusory without supporting factual allegations. Mot. to Dismiss, at 19, ECF No. 46-5. However, this Court has held allegations that the assignee "was not properly authorized to collection the debt" met the Rule 9(b)'s particularity standard sufficient to put a defendant on notice of a plaintiff's claims under the Consumer Fraud Act. *North v. Portfolio Recovery Assocs., LLC*, No. 2:20-cv-20190 (BRM) (JSA), 2021 U.S. Dist. LEXIS 184974, at *14-15 (D.N.J. Sep. 24, 2021).

Under the heightened pleading standard, a plaintiff must plead claims with "sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged . . . . [T]he plaintiff must plead or allege the date, time and place of the alleged fraud or unconscionable commercial conduct or otherwise

inject precision or some measure of substantiation" into the allegations. *Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 13–7738, 2015 WL 926221, at *9 (D.N.J. Mar. 4, 2015) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Nowhere do the Defendants claim that they do not have notice of the claims being asserted against it. The Federal Rules only require a "short and plain statement" showing that the pleader is entitled to relief. Fed. R. Civ. P. 8. The First Amended Complaint easily satisfies this requirement. The Court should construe a Plaintiff's allegations liberally since under Rule 8(a)(2), a pleading is only required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). It also advises the Defendants of the basis for the Consumer Fraud Act with sufficient particularity required by Rule 9(b).

Plaintiff sets forth the roles of each of the Defendant in the operation of the Trusts. U.S. Bank serves as an Indenture Trustee and Special Servicer. In both capacities, U.S. Bank's role is to collect the loans that the Trusts allege they own. TSI is a sub-servicer for collection. They each have notice that the claims against them rest on the same facts. They are trying to collect loans when they know they lack any ability to show that any Trust owns loans or that any particular Trust owns

any particular loan. They are trying to collect loans that are void under the NJCFLA.

**2.3    Injuries Alleged Against the Defendant Trusts Include The Non-Trust Parties that Act on their Behalf Through Concerted Action and Contractual Agreements.**

All collection activities done in the name of the Trust are carried out by co-Defendants and other non-Trust entities. As the Trusts have no employees, any allegations of wrongdoing against the Trusts in turn implicates the other defendants who act in the name of the Trusts. While the Trusts have obligations to pay investor/noteholders outstanding, all the assets of the Trust are collected to pay notes that are subject to an Indenture and the Indenture is controlled by the Indenture Trustee, U.S. Bank. FAC ¶ 41. As the Indenture Trustee, U.S. Bank has the "right, title and interest in" the proceeds from the student loans, U.S. Bank speaks for the Trusts. (*In re Nat'l Collegiate Student Loan Trusts Litig.*, 251 A.3d 116, 135-36 (Del. Ch. 2020)). Likewise, TSI as the sub-servicer collects from borrowers on behalf of the Trusts.

Plaintiff's class action can include all of the various entities operating together on behalf of the Trusts based on a juridical link. Under the juridical link doctrine, a plaintiff with standing to pursue class claims against one entity, may in limited circumstances, also pursue claims against related entities that were not the direct cause of the named plaintiff's injuries. *La Mar v. H&B Novelty & Loan Co.,*

489 F.2d 461, 466 (9th Cir. 1973). The concept of a juridical link is addressed in

Newberg and Rubenstein on Class Actions § 2:5 (6th ed.):

> The primary exception to that principle is the "juridical link" doctrine, first posited by the Ninth Circuit in its 1973 decision in *La Mar v. H & B Novelty & Loan Co.*[7] The court assumed that the class representative had standing to sue[8] and moved to the issues of typicality and adequacy. The court held that "a plaintiff who has no cause of action against the defendant cannot fairly and adequately protect the interests of those who do have such causes of action,"[9] but then noted:
>
> > Obviously this position does not embrace situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury. Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.[10]
>
> Some courts have applied the juridical link doctrine to standing. They have allowed class actions to proceed against defendants who directly injured none of the named plaintiffs when those defendants (1) allegedly caused similar injuries to unnamed class members and (2) it would be expeditious to resolve the entire dispute in one lawsuit.[11] The doctrine is used mostly when "there was either a contractual obligation among all defendants or a state or local statute requiring common action by the defendants."[12]

Although the application of the juridical link doctrine is rare, the criteria for

the exception noted in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466

(9th Cir. 1973) applies here. The Plaintiff has alleged a common scheme and series

of contractual relationships between the various defendants. As noted in the First

Amended Complaint, U.S. Bank itself has moved to intervene in actions in which it was not named as a defendant claiming it had a right to do so because of its relationship to the Trusts. *See* FAC, ¶¶ 41-42; *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, 575 F. Supp. 3d 505 (D. Del. 2021), motion to certify appeal granted sub nom. *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, No. 1:17-cv-1323-SB, 2022 WL 548123 at * 1 (D. Del. Feb. 11, 2022) (adopted that its role as a special servicer was "to collect 'past due and defaulted student loans' and to do 'collections litigation'").

And, as explained above, a single action would provide expeditious relief since the allegations upon which the claims are based are the same. The records of AES are the sole source for the records of the others since TERI no longer exists. And, the Trust Defendants were never licensed under the NJCFLA, rendering the debts void as a matter of law.

The actions of the Defendants are also tied together by the Consumer Fraud Act that covers from the sale through subsequent performance. The claims exist against all who played any role in the acts that violate the CFA. All of the Defendants have participated and can be held accountable for their role under the CFA.

**2.4    The Plaintiff's Factual Allegations Necessitate Suing All 15 Defendant Trusts**

Defendant Trusts ask this Court to dismiss the 14 of the NCSLT trusts, based solely on internal information that the 2007-1 NCSLT Trust allegedly owns the Browne loan even though that information was never shared with Browne prior to the filing of this lawsuit. Mot. Dismiss, ECF No. 44-1 at p. 8. The Trusts argue that the Plaintiff cannot sue all 15 Defendant Trusts because a loan was only assigned to one Trust. *Id.* at p. 9. Since they now claim that Browne's loan is allegedly owned by the 2007-1 NCSLT Trust, they ask Browne to ignore facts in his complaint and find that the 2007-1 NCSLT Trust is the only entity that should be sued. *Id*. at p. 9. The argument is that Browne improperly "grouped" the Trust Defednants as a single entity, failing to attribute an injury to any individual Trust Defendant. *Id*. at p. 8. In the Trust's view, the Plaintiff can only maintain a lawsuit against one Trust because allegedly only one trust could have caused him an injury. *Id.*, at p. 9.

The Trust's argument misconstrues the factual allegations in the First Amended Complaint against the 15 Trust Defendants. Since the Trusts regularly demand payments through their non-Trust agents using the acronyms "NCT" or "NCSLT" in communications with borrowers and in credit reporting to consumer credit reporting agencies there is no basis to sue just one Trust. The acronyms "NCT" or "NCSLT" appears to be a generic reference to 15 statutory trusts that

include the National Collegiate Student Loan Trust" in their names. FAC, ¶ 3.

Thus, Browne's only harm was caused by the "National Collegiate Student Loan

Trusts" collectively. Despite the desires of the Defendant Trusts, Browne has no

basis to sue 2007-1 NCSLT Trust alone, as no entity with that name ever

demanded payment from Browne. Additionally, since the Plaintiff alleges that all

of the Defendant Trusts lack proof of assignee status for all of the loans, there

would be no logical reason to name only one Trust in this lawsuit.

Although the Defendant Trusts couch their arguments as a failure to state a

claim against 14 of the Defendant Trusts, their disputes are factual in nature and

cannot be resolved on a motion to dismiss. Rule 12(b)(6) motions test the legal

sufficiency of claims, not the factual allegations in a complaint. Fed. R. Civ. P.

12(b)(6). At this stage of the lawsuit, the Court must accept all factual allegations

laid out in the First Amended Complaint as true and determine whether sufficient

factual allegations infer that the defendant is liable for the alleged misconduct.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 556 (2007)). Rather, reasonable inferences from factual allegations in the

complaint are viewed in the light most favorable to the plaintiff. *See Warren Gen.*

*Hosp. v. Amgen Inc*., 643 F.3d 77, 84 (3d Cir. 2011). A Rule 12(b)(6) motion should

not be used to address credibility or proof of issues in a complaint as the Trust

Defendants have attempted to do here. *Twombly*, 550 U.S. at 556. "In considering a

12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." *Nami v. Fauver,* 82 F3d 63, 65 (3rd Cir. 1996). Since the Defendant Trusts have attacked the facts rather than the Plaintiff's claims, asking this Court to adopt an allegation that the 2007-1 NCSLT Trust is the owner of the loan while ignoring the factual allegations in the operative Complaint that none of the Trusts have any knowledge of ownership for any of the loans, this motion to dismiss the 14 of the Defendant Trusts should be denied.

## 2.5   Defendants Unlawful Conduct Is Covered By the Consumer Fraud Act

Plaintiff's claims under the Consumer Fraud Act are based on allegations that the Defendant Trusts through their co-Defendants, U.S. Bank and TSI, engage in fraud, deception or misrepresentation in connection with the purchase of merchandise when they demand payment from borrowers on loans for which they lack any knowledge of ownership and fail to possess any assignment documentation, inducing New Jersey consumers like Browne to pay on loans when they were not collecting for an owner of the loans and none of the 15 Defendant Trusts can prove that they are the assignee of the individual loans and when the debts were void pursuant to the NJCFLA. Defendants deny these claims and questions whether the actions occurred *in connection with the sale of merchandise,*

applies to debt collection a prerequisite for a CFA claim. Mot. to Dismiss at 21, ECF No. 44-1.

To establish liability under the Consumer Fraud Act, a plaintiff must show 1) an unlawful practice by the defendant, 2) an ascertainable loss of moneys or property, real or personal, by the plaintiff, and 3) a causal relationship between unlawful conduct and the ascertainable loss, is entitled to legal and/or equitable to bring equitable relief, treble damages, and reasonable attorneys' fees. N.J.S.A. 56:8–19; *Gonzalez v. Wilshire Credit Corp.,* 207 N.J. 557, 576 (2011). The CFA is a remedial statute that is to be applied broadly and construed liberally in favor of consumers. *Scibek v. Longette,* 339 N.J. Super. 72, 770 A.2d 1242 (App. Div. 2001) (CFA legislation was passed to help the victimized consumer, not the occasionally victimized seller). The CFA applies to unlawful practices in the

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, *in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid*, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J.S.A. 56:8–2 (emphasis added).

Despite claims from Defendants that the CFA is limited to "purchasing" goods,[1] the term "merchandise" that is at issue in this case is not limited to goods, it regulates services, including consumer credit. *Lemelledo v. Beneficial Mgmt. Corp. of Am.,* 150 N.J. 255, 265 (1997). In turn, coverage for consumer credit transactions under the CFA is not limited to the original creditor, it also applies to the assignee of a credit transaction under the "subsequent performance" provision of the CFA. N.J.S.A. 56:8–2; *Jefferson Loan Co. v. Session,* 397 N.J. Super. 520, 538, 938 A.2d 169 (App. Div. 2008) (the unconscionable terms and unconscionable loan-collection activities of an assignee of a retail installment sales contract were actionable under the CFA). Likewise, in 2011, the New Jersey Supreme Court in *Gonzalez v. Wilshire Credit Corp,* in the context of a mortgage transaction between two homeowners and a commercial lender, the court found that collecting or enforcing a loan, whether by the lender or its assignee, constitutes the "subsequent performance" of a loan within under the CFA. *Gonzalez v. Wilshire Credit Corp*, 207 N.J. 557, 577-78 (2011). Thus, the CFA is applicable to a debt buyer like the Defendant Trusts and the co-Defendants through whom it acts. *North v. Portfolio Recovery Assocs., LLC*, No. 22-cv-20190, 2021 WL 4398650, at *4 (D.N.J. Sept. 24, 2021) (following *Pollitt v. DRS Towing, LLC*, No. 10-1285, 2011 U.S. Dist. LEXIS 41825, 2011 WL 1466378, at *6 (D.N.J. Apr. 18, 2011)

---

[1] *See* ECF No. 46-5, p.18; ECF No. 43-1, p. 22; ECF 44-1, p. 22.

As to the terms "in connection with," the Missouri Supreme Court in
*Conway v. CitiMortgage, Inc*., 438 S.W.3d 410, 415 (Mo. 2014) is particularly
helpful as that court specifically addressed whether the Missouri law that has
prohibited "any deception, fraud, false pretense, false promise, misrepresentation,
unfair practice or the concealment, suppression, or omission of any material fact in
connection with the sale or advertisement of any merchandise…" (similar to New
Jersey's CFA that applies to "any unconscionable commercial practice, deception,
fraud, false pretense, false promise, misrepresentation, or the knowing,
concealment, suppression, or omission of any material fact with intent that others
rely upon such concealment, suppression or omission, in connection with the sale
or advertisement of any merchandise…") applied to collections by any person and
was not limited to the original creditor. The *Conway* Court relied on the term's
ordinary meaning and held that "[a] party's right to collect a loan is part of that sale
and is, therefore, "in connection with" the loan. It found that the consumer had the
right to assert a claim against CitiMortgage even though it was not an original
party to the contract. It is also important to note that the Missouri statute did not
include the language added to New Jersey's CFA that extends the law to
"subsequent performance of the contract."

The Defendants look to *DepoLink Ct. Reporting & Litig. Support Servs. v.
Rochman,* 430 N. J. Super., 325, 339 (App. Div. 2013) and *Boyko v. Am. Intern*

*Group, Inc.*, No. 08-cv-2214, 2009 WL 5194431, at *4 (D.N.J. Dec. 23, 2009) to claim that any misrepresentation actions by a debt collection agency did not occur in connection with the sale of merchandise (i.e. debt), as any alleged misrepresentations occurred later on when attempting to collect the alleged debt. Their analysis is deficient as it does not account for the "subsequent performance" provision of the CFA. N.J.S.A. 56:8–2. There is nothing that limits the CFA to only the "sale" of debt. As *Wilshire* made clear, an assignee's actions in servicing, collecting and enforcing a loan proved to be actions within the CFA. 207 N.J. at 577-78.

Defendants also cite to the March, 2011 decision in *Chulsky v. Hudson Law Offices, P.C.,* 777 F. Supp. 2d 823, 847 (D.N.J. 2011) to say that debt collection is not covered under the CFA. That decision was issued before *Gonzalez* and concluded that the CFA does not cover the debt collection activities of a third party that purchases consumer debt. In reaching its decision, the *Chulsky* looked to other states that had consumer protection laws, but in conducting that review, it did not have the binding decision in *Gonzalez* and it did not consider Missouri's Merchandising Sales Practice Law that is virtually identical law to the New Jersey CFA as discussed above.

The *Chulsky* is not binding precedent. Respectfully, its decision is not consistent with the interpretation applied to a remedial law like the CFA. The

Missouri *Conway* Court's analysis is also not binding precedent on this court but

its rationale is persuasive:

> Given that the MMPA was enacted to supplement the
> common law definition of fraud, there is no compelling
> reason to interpret "in connection with" to apply only
> when the entity engaged in the misconduct was a party to
> the transaction at the time the transaction was initiated as
> *Professional Debt* and *Portfolio Recovery Associates*
> require. Even if the loan servicer was not an original party
> when the lender and borrower agreed to the services and
> responsibilities each would perform, enforcing the terms
> of the loan is in connection with the ongoing sale of the
> loan, as discussed above. Because a loan is an ongoing
> transaction, loan collection procedures, whether initiated
> by a loan originator or a loan servicer, are done "in
> connection with" the original procurement of the loan.

438 S.W.3d at 415–16.

Indeed, the CFA applies "to the unconscionable loan-collection activities of

an assignee of a retail installment sales contract, *Jefferson Loan Co. v. Session*, 397

N.J.Super. 520, 538, 938 A.2d 169 (App. Div. 2008). Accordingly, collecting or

enforcing a loan, whether by the lender or its assignee, constitutes the 'subsequent

performance' of a loan, an activity falling within the coverage of the CFA. *Ibid*.;

accord N.J.S.A. 56:8–2." *Gonzalez v. Wilshire Credit Corp*., 25 A.3d 1103, 1115–

16, 207 N.J. 557, 577–78 (2011).

**2.6    Collecting A Void Unenforceable Debt While Concealing This Fact Is Conduct Prohibited By The Consumer Fraud Act**

"New Jersey's courts regularly find that the violation of a different statute or even municipal ordinance may also violate the CFA as an affirmative act. *See Lemelledo v. Beneficial Mgmt. Corp. of Am.,* 150 N.J. 255, 275, 696 A.2d 546 (1997) (finding CFA prohibits practice of "loan packing," selling insurance to borrowers by increasing the principal borrowed, despite extensive additional regulation of the sale of insurance, including by statute); *Heyert v. Taddese*, 431 N.J. Super. 388, 415, 70 A.3d 680 (App. Div. 2013) (charging rent above limits of local rent control ordinance qualifies as unconscionable commercial practice under CFA)." *Macdonald v. Cashcall, Inc*., 333 F.R.D. 331, 351 (D.N.J. 2019). Clearly, collecting a void debt, *i.e.*, a debt that is no longer owed, is an unconscionable commercial practice. *See North v. Portfolio Recovery Assocs., LLC*, No. 2:20-cv-20190 (BRM) (JSA), 2021 U.S. Dist. LEXIS 184974, at *13-14 (D.N.J. Sep. 24, 2021).

"No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act." N.J.S.A. 17:11C-3(a).

> A consumer lender who violates or participates in the violation of any provision of section 3 . . . of this act, shall be guilty of a crime of the fourth degree. A contract of a loan not invalid for any other reason, in

> the making or collection of which any act shall have
> been done which constitutes a crime of the fourth
> degree under this section, *shall be void and the lender*
> *shall have no right to collect or receive any principal,*
> *interest or charges. . . .*"

N.J.S.A. 17:11C-33(b) (emphasis added).

The present-day iteration of the NJCFLA originated as the New Jersey

Licensed Lenders Act ("NJLLA"), N.J.S.A. 17:C-1 to -49—which was enacted

in 1997 and superseded by the New Jersey Residential Mortgage Lending Act

("NJRMLA"), N.J.S.A. 17:11C-51 to -89, and the NJCFLA, the latter going

into effect in July 2010. The NJLLA was enacted, in part, to curtail predatory

lending practices, including, *inter alia*, charging and/or assessing of unlawful

interest—as was done here. Further, the NJCFLA's application with respect to

assignees has been interpreted by this Courts several times in recent years.

In *Veras v. LVNV Funding, LLC*, 2014 U.S. Dist. LEXIS 34176, at *16-

19 (D.N.J. March 17, 2014), this Court held that the plaintiff had properly

alleged a claim under the Fair Debt Collection Practices Act because LVNV

(an alleged assignee) was not licensed under the NJCFLA. *Veras* further held

that since the law required LVNV to be licensed, LVNV was not the lawful

owner of the debt. *Id.* at *19; *see also Lopez v. Law Offices of Faloni &*

*Associates, LLC*, 2016 U.S. Dist. LEXIS 124730, at *13 (D.N.J. Sept. 14,

2016) (holding that an assignee had to be licensed under the NJCFLA and "a

debt collector's representation in a collection complaint that it had the right to collect a debt when, in fact, it lacked the license required to initially purchase the debt, would violate, at minimum, FDCPA section e(10).”); *Valentine v. Unifund CCR, Inc.*, 2021 U.S. Dist. LEXIS 44747, at *12 (D.N.J. Mar. 10, 2021) (an assignee who allegedly purchased a defaulted Capital One credit card debt to meet the definition of a consumer lender under the NJCLFA); *Arroyo v. Stoneleigh Recovery Assocs., LLC*, 2019 U.S. Dist. LEXIS 138287, at *13 (D.N.J. Aug. 14, 2019) (assignee of Capital One debt had to be licensed); *Tompkins v. Selip & Stylianou, LLP*, 2019 U.S. Dist. LEXIS 21937 (D.N.J. Feb. 11, 2019) (assignee of Juniper Bank credit card debt had to licensed); *Latteri v. Mayer*, 2018 U.S. Dist. LEXIS 85926, at *6 (D.N.J. May 22, 2018) (motion to dismiss denied where plaintiff alleged defendant violated the FDCPA when it attempted to collect a debt on behalf of an assignee who was an unlicensed consumer lender); *North v. Portfolio Recovery Assocs., LLC*, No. 2:20-cv-20190 (BRM) (JSA), 2021 U.S. Dist. LEXIS 184974 (D.N.J. Sep. 24, 2021) (denying motion for judgment on the pleadings to dismiss CFA claim against an assignee for failure to be licensed under the NJCFLA).

Further, *Valentine v. Mullooly, Jeffrey, Rooney & Flynn LLP*, criticized *Woo-Padva v. Midland Funding LLC*, BER-L-3625-17, 2022 N.J. Super. Unpub. LEXIS

96 (Law Div. Jan. 21, 2022)[2] and held an assignee of a Capital One credit card debt

needed to be licensed under the NJCFLA.

> In analyzing whether this definition covered debt buyers, the Superior Court in *Woo-Padva* stated that "notes" were distinct from "debts," but did not define either term. 2022 N.J. Super. Unpub. LEXIS 96, 2022 WL 267938, at *2. The Superior Court relied on three unpublished cases from Ohio and Michigan to support its assertion, and pointed to the fact that a New Jersey statute, N.J. Stat. Ann. § 12A:3-118, "explicitly provides the statute of limitations for 'an action to enforce the obligation of a party to pay a note'" while another statute, N.J. Stat. Ann. § 2A:14-1 "provides the statute of limitations to enforce claims based on a breach of contract that generally apply to credit card debts." 2022 N.J. Super. Unpub. LEXIS 96, 2022 WL 267938, at *2.

> Respectfully, the Court is not persuaded by this line of reasoning. Courts in this District have invoked that part of the NJCFLA—the part reading: "directly or indirectly engag[es] . . . in the business of buying, discounting or endorsing notes"—when classifying debt collection practices as falling within the "consumer loan business." *Tompkins*, 2019 U.S. Dist. LEXIS 21937, 2019 WL 522143, at *3 (citing *Nepomuceno v. Midland Credit Mgmt.*, No. 14-5719, 2017 U.S. Dist. LEXIS 79307, 2017 WL 2267261, at *9 (D.N.J. May 24, 2017), and *Lopez v. Law Offices of Faloni & Assocs., LLC*, 16-01117, 2016 U.S. Dist. LEXIS 124730, 2016 WL 4820629, at *5 (D.N.J. Sept. 14, 2016)); *see also Valentine I*, 2021 U.S. Dist. LEXIS 44747, 2021 WL 912854, at *5. This Court

---

[2] *Woo-Padva* was later affirmed on the basis the CFA does not apply to a debt buyer. *Woo-Padva v. Midland Funding*, No. A-1996-21, 2023 N.J. Super. Unpub. LEXIS 1550 (App. Div. Sep. 21, 2023).

> will do the same and find that as a purchaser of debt, DAP
> III meets the definition of "consumer lender" required to
> obtain a license under the NJCFLA. *Valentine I*, 2021 U.S.
> Dist. LEXIS 44747, 2021 WL 912854, at *5 (finding same
> regarding DAP III). Accordingly, for the reasons explained
> above, Defendants' motion to dismiss the Complaint on
> the grounds that DAP III is exempt from the NJCFLA's
> licensing requirements is denied.

2022 U.S. Dist. LEXIS 118399, at *13-14 (D.N.J. July 6, 2022)

*See also Peralta v. Ragan*, 2022 U.S. Dist. LEXIS 234300, at *6-7 (D.N.J.

Dec. 30, 2022) ("Court agrees with the reasoning set forth in *Valentine*, and finds

. . . that [First Portfolio] is a consumer lender' under the NJCFLA."); *New Century*

*Fin. v. Trewin*, 2018 N.J. Super. Unpub. LEXIS 1688, *9-10 (Ch. Div. May 24,

2018)  (Where the court vacated a years old default judgment and held that it was

"***satisfied that the judgment obtained by plaintiff's predecessor is void, by virtue***

***of [the loan assignor's] unlicensed status***. N.J.S.A. 17:11C-33(b)." (emphasis

added)).

Though the area of law is still developing in the Superior Court of New

Jersey, on September 23, 2022, the Honorable Jeffrey R. Jablonski, A.J.S.C. issued

an oral opinion in the matter entitled *Randy Hopkins v. LVNV Funding, LLC, et al.*,

Docket No. HUD-L-001732-22 (see transcript of argument and Order). Like the

case at bar, *Hopkins* addresses licensure requirements for assignees. In denying the

defendants' cross-motion to dismiss, *Hopkins* concluded that assignees are required

to be licensed under the NJCFLA as a consumer lender or sales finance company. The oral opinion addressed, in part, whether an assignee who assigned the debt to another entity for collection had to be licensed under the NJCFLA. *Hopkins* explicitly rejects *Woo-Padva v. Midland Funding LLC,* 2022 N.J. Super. Unpub. LEXIS 96 (Law Div. Jan. 21, 2022) and stands for the proposition that purchasers of debt meet the definition of "consumer lender" and, therefore, are required to be licensed under the NJCFLA. Further, the court in *Hopkins* determined that Plaintiff's claims for violations of the Consumer Fraud Act and the Fair Debt Collection Practices Act can be based on the defendants' violations of the NJCFLA.

On March 31, 2023, Honorable Anthony V. D'Elia, J.S.C., did the same. *See* transcript of the March 31, 2023 oral argument and Order Denying Motion to Dismiss in *Gottlieb v. JH Portfolio Debt Equities, LLC*, HUD-L-000382-22 (Law Div. Mar. 31, 2023).

On April 26, 2023, the Honorable Keith E. Lynott, J.S.C., issued an Order and Statement of Reasons in a case venued in the Law Division of Essex County Superior Court entitled *McQueen v. Fein, Such, Kahn & Shepard, P.C.*, ESX-L-1439-22, 2023 N.J. Super. Unpub. LEXIS 640 (Law Div. April 26, 2023).[3] In

---

[3] *McQueen* also expressly analyzed and contradicted *Woo-Padva v. Midland Funding LLC*, 2022 N.J. Super. Unpub. LEXIS 96 (Law Div. Jan. 21, 2022).

denying the defendant's motion to dismiss, Judge Lynott addressed the licensure

requirements of the CFLA:

> The question of whether the Plaintiff has stated a viable
> claim for relief turns ultimately upon whether Razor and
> the other assignees of the Plaintiff's credit card account
> and debt were functioning as a "consumer lender" and/or
> "sales finance company" under the NJFCLA at the time
> they accepted assignment of such account and debt and/or
> sought to enforce and collect the same and were thereby
> required to secure a license. If they were so obligated, the
> Plaintiff has stated a viable claim for relief under the
> FDCPA as against FSK&S, inasmuch as one could
> reasonably conclude in such circumstances that the letter
> FSK&S sent to the debtor was misleading and/or
> unconscionable because it did not report that the serial
> creditors were unlicensed at the time they accepted
> assignment of the debt and/or initiated legal proceedings
> against the debtor in the Bergen County Action and that
> the debt was void.
>
> Thus, presuming a license was required and not obtained
> at the time of the first assignment of the debt, one could
> conclude that McQueen's account and resulting debt were
> rendered void. There is no provision in the statute that
> explicitly permits a cure after the fact and no case law cited
> on this record affording a licensee the right to revive a void
> contract or debt by securing the license.

*McQueen*, ESX-L-1439-22, 2023 N.J. Super. Unpub. LEXIS 640, at *9-10.

Judge Lynott went on to say:

> The NJCFLA requires a "consumer lender" to obtain a

license and defines a "consumer lender" as (in relevant part) a person who should be licensed to engage in the "consumer loan business". . . . The Court must interpret and apply statutory text according to the plain, ordinary meaning of its terms. It must also construe such text in the context of relevant definitions or other provisions of the statute examined in their entirety. It is required to interpret in a manner that is consonant with the statutory purpose and that does not produce an absurd or nonsensical result.

The Court finds that ***the plain, ordinary meaning of the term "notes", as used in this statutory definition, encompasses a debt obligation arising–as here–from an underlying credit card account***. A dictionary definition of "note" is a "written promise to pay a debt." *Note*, MERRIAM-WEBSTER . . . ***An open-ended credit card agreement*** of the type Razor and its predecessor assignees acquired ***is such a written promise to pay a debt***.

But the statute captures within the definitions of "consumer lender" and "consumer loan business" a wide range of other participants in consumer lending. As a result of the second sentence of the definition, the statutory coverage extends not only to those making or extending loans, but those that solicit such loans, those that assist in the procurement or negotiation of the same and those that purchase or acquire "notes." The purpose of the second sentence of the definition is pellucid – to expand the scope of the statute and its licensure and other requirements well beyond the entities that actually provide the credit ab initio.

> It is in this context that one must examine the explicit text that the statutory scheme encompasses those in the business of "buying, discounting or endorsing notes." Because the statutory definition includes (i) those that initiate consumer loans by issuing credit cards and credit card agreements; and (ii) via the second sentence, intended to broaden the coverage, those engaged in purchasing "notes," there is no reason to suppose that the Legislature intended by use of that term to limit the same to negotiable promissory notes as defined and addressed in the Uniform Commercial Code and thereby exclude from the coverage of the statute purchasers of credit card accounts. Put differently, as the statute and licensing requirement apply to original credit card issuers, there is ample reason to suppose that the Legislature intended to include purchasers of credit card accounts within the scope of a provision – the second sentence – that brings within its reach the purchasers of consumer loans.

*McQueen*, ESX-L-1439-22, 2023 N.J. Super. Unpub. LEXIS 640, at *11-14.

Plainly and as supported by the numerous cases cited above, the Trust Defendants engaged in the consumer loan business when it purchased or otherwise acquired the student loans.[4] As a result, the alleged debt was void the moment the Trust Defendants acquired the account and, subsequently, Defendants lacked the

---

[4] Defendants say only "accounts" were assigned not "notes." We are puzzled by this argument since the documents upon which the Defendants rely include a document entitled "Note Disclosure Statement." (ECF No. 44-2). The Note Disclosure Statement states "[t]his disclosure statement relates to your Loan Note . . . ." There is no doubt that the debt alleged acquired by the Trust Defendants falls within the "notes" covered by N.J.S.A. 17:11C-2. Moreover, this loan was taken out in order to attend a New Jersey school—William Paterson University (https://www.wpunj.edu)—by New Jersey residents with Chase bank who has numerous branches in New Jersey. *Id.* Thus, the NJCFLA applies here.

legal right or authority necessary to attempt collection or enforcement of the account.

Lastly, enforcement of the alleged debt would constitute enforcement of a contract entered into in violation of New Jersey's licensing statute. *See Accountemps Div. of Robert Half, Inc. v. Birch Tree Grp., Ltd.*, 115 N.J. 614, 626 (1989) (holding "[o]ur courts have consistently held that public policy precludes enforcement of a contract entered into in violation of [the State's] licensing statute[s]"). Similarly, in *Insight Global, LLC v. Collabera, Inc.*, 446 N.J. Super. 525, 531-32 (Ch. Div. 2015), the Chancery Division examined the limit on the ability of an unlicensed entity to seek relief from a court. *Insight Global* held that an unlicensed party has no right to bring claims before the court and public policy prohibits enforcement of a contract entered into in violation of a licensing statute. *Insight Global, LLC*, 446 N.J. Super. at 531-32. Courts in New Jersey and many other states have consistently refused to aid or ratify illegal activities.

## 2.7  Plaintiff Can Enforce The NJCFLA Against the Defendants

### 2.7.1  The NJCFLA is Applicable to the Defendants

The Defendants claim the NJCFLA does not confer a private right of action that Browne can pursue and thus he cannot obtain a declaratory judgment that the defendants violated the NJCFLA by their failure to be licensed. ECF No. 43-1, at

17; ECF No. 44-1, at 12-13, ECF No. 46-5, at 14-16. The Plaintiff disagrees as the underlying illegal behavior involving credit here is consistent with the decision in *Perez v. Rent A Center Inc.*, 892 A.2d 1255, 1275, 186 N.J. 188, 220 (2006), where the New Jersey Supreme Court held that a violation of the retail installment sales act provided a *predicate act* for a CFA claim. The court reiterated its earlier rulings that said the focus for determining whether a violation of another law could be the basis for a claim under the CFA is whether or not there was "a direct and unavoidable nature" of a conflict between the regulation of the law and the CFA. Like *Rent A Center*, the Defendants do not identify any conflict between the NJCFLA and the CFA.

Moreover, Browne has adequately pled valid misrepresentations and unlawful conduct based on the lack of proper licensing and the concealment that the debt is void. Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462, 138 N.J. 2, 17 (1994). And, "[u]nlawful acts expressly regulated by other statutes, regulations, or rules not promulgated under the CFA can give rise to a CFA claim." *Pierre-Charles v. Consumer Portfolio Servs.*, No. 17-cv-10025, 2018 WL 3425737 at *4 (D.N.J. July 16, 2018) (collecting cases). The claims here are based on misrepresentations, omissions and violations of specific licensing laws that provide acts in contravention of the licensing law are

void. See N.J.S.A. 17:11C-33(b). The New Jersey courts have permitted CFA

claims based on violation of other laws. *See, e.g.*, *Perez, supra.*

### 2.7.2  *Plaintiff Can Assert A Claim Based On The NJCFLA*

To determine if a statute confers an implied private right of action, courts

consider whether: (1) plaintiff is a member of the class for whose special benefit

the statute was enacted; (2) there is any evidence that the Legislature intended to

create a private right of action under the statute; and (3) it is consistent with the

underlying purposes of the legislative scheme to infer the existence of such a

remedy.  *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.,* 168 N.J. 255,

272 (2001).

Plaintiff is clearly a member of the class for whose benefit the statute was

enacted—a consumer.  While the NJCFLA permits the Commission to take action,

nothing in the Act indicates that this is the <u>sole</u> method of enforcement. Nor is

there any language granting exclusivity to the Commissioner. To the contrary,

NJCFLA provides remedies to the consumer. For example, "a consumer lender

who knowingly and willfully violates any provision of this act shall also forfeit to

the borrower three times any amount of the interest, costs or other charges

collected in excess of that authorized by law." N.J.S.A. 17:11C-33(b).

The provisions of N.J.S.A. 17:11C-18 grants certain authority to the

Commissioner, but nowhere does it provide the Commissioner any exclusive

authority. Nowhere in the Act is any prohibition on a private cause of action. A statute without a meaningful remedy is a toothless tiger, not worth the paper it was written upon. The statute merely provides specific authority to the Commissioner to take specific actions but none of these specified actions foreclose a private right of action. At a minimum, the request for a declaration and related relief can be sought by a person who is to be protected by the law.

## 2.8    Plaintiff has Plead a Plausible Unjust Enrichment Claim

To claim a viable unjust enrichment claim, a plaintiff must show that  a (1) the defendant received a benefit; and (2) retention of that benefit by defendant would work an injustice. *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994). "The unjust enrichment doctrine requires that a plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.*; *Yingst v. Novartis AG*, 63 F. Supp. 3d 412, 417 (D.N.J. 2014).

Browne's claims are based on monies wrongfully collected based on the collection of void debt from the Defendant Trusts' and non-Trust parties when they did not possess an assignment of debt from the originating banks to the Trusts, or a license under the NJCFLA, rendering the debt void and uncollectible. Moreoever, the Defendants failed to obtain a proper license to do business in the State of New

Jersey and thus any monies collected from borrowers without a license was illegal and an injustice. *See* Restatement (Third) of Restitution and Unjust Enrichment, § 18 (2011) ("A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment.") Defendants claim there cannot be an unjust enrichment claim because there is an express contract for the loans and for the conduct of the defendants in servicing and collecting from borrowers. The Defendants misconstrue the existence of a contractual obligation with the original creditor for a valid contractual obligation with the Defendant Trusts. Here, Browne claims that there is no valid assignment and thus no basis for any contractual agreement between Browne and the class members and the Defendant Trusts. As to other contractual agreements between the Defendants to carry out servicing, collection, and enforcement activities on behalf of the Trusts, without a valid assignment, those agreements are not tied back to the individual borrower and cannot supply the contractual agreement that would negate an unjust enrichment claim. As to the lack of a license, the Defendants had no legal right to be assigned the contract or collect any amount. N.J.S.A. 17:11C-33(b). As explained by Comment e to Restatement (Third) of Restitution and Unjust Enrichment, §18, where the action is "legally unenforceable" (which describes unlawful debt collection) restitution most

certainly *is* required: "The need to remedy this misapplication of legal process—so that the law not stultify itself by requiring what it has declared may not be required—constitutes an important reason for restitution that is independent of the individualized equities of the parties."

After contending there is no cause of action, the Defendants claim that Browne has not stated the elements of a claim for unjust enrichment. "To prove a claim for unjust enrichment, a party must demonstrate that the opposing party 'received a benefit and that retention of that benefit without payment would be unjust.'" *Thieme v. Aucoin-Thieme*, 227 N.J. 269, 288 (2016). Browne has adequately alleged the elements of an unjust enrichment claim. *See* FAC, at ¶¶ 143-147. Browne submits he has adequately alleged facts to support his claim that the Defendants were unjustly enriched by wrongly receiving funds when the Trusts and the non-Trust Defendants who assisted the Trusts in servicing and collection could not prove that the Trusts owned the loan or received funds when they were not licensed. If the Court does not agree, then he should be granted leave to amend his complaint.

## 2.9    A Permanent Injunction Should be Granted

Defendant TSI posits the request for an injunctive relief as tantamount to permanent debt forgiveness and rests on an assumption that the Defendant Trusts can never prove loan ownership of the loans they hold. ECF No. 44-1, at 25-27.

They also claim that the request exceeds the claims at issue in the lawsuit and should be dismissed. *Id.*, p. 25. Their concerns are unfounded. While Browne has paid off the alleged loan, there is still a real and immediate threat of an irreparable injury to Browne and the class members because the Defendants may engage in other forms of collection that could lead to irreparable harm. *Rinaldo v. RLR Inv., LLC*, 904 A.2d 725, 731 (N.J. Super. Ct. App. Div. 2006). Browne may still be subject to future collection efforts. Despite payment, some servicers and collectors continue to report debt to consumer reporting agencies. *Buell v. Experian Info. Sols., Inc.*, No. 1:22-cv-14-HAB, 2023 WL 3596357, at *2 (N.D. Ind. May 23, 2023) which cites and paraphrases *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014) (Debts do not disappear simply because the party owed the money can no longer file a lawsuit to collect them); *Spencer v. McCune*, 126 N.E. 30, 31 (Ind. Ct. App. 1920) (same); and *Porter Mem. Hosp. v. Wozniak*, 680 N.E.2d 13, 15 (Ind. Ct. App. 1997) ("We note that discharge does not cancel the obligation; the obligation still exists. A discharge merely disables the creditor from enforcing its claim.")

Browne submits that payment of all amounts allegedly owed to an alleged creditor should end credit reporting of the debt, but the *Buell* court permitted the continued credit reporting of a debt despite a court order dismissing a debt collection lawsuit with prejudice. Credit reporting is intertwined with debt

collection. The Fair Debt Collections Practices Act itself includes false credit reporting as a violation of the FDCPA. See 15 U.S.C. § 1692e(8). The plausibility of future collection efforts by the Defendants through credit reporting is enough to sustain the cause of action. *Rinaldo*, 904 A.2d at 731.

## 2.10   If Any Deficiency Exists, The Court Should Allow The Plaintiff Leave To Amend The Complaint

The standard provides "In order to survive a motion to dismiss, the complaint must contain sufficient factual matter, which if accepted as true, states a facially plausible claim for relief." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 147 (3d Cir. 2013) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (to survive dismissal, complaint must state a "plausible claim for relief"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (need only to provide factual allegations that are sufficient "to raise a right to relief above the speculative level" (citations omitted)). And, "[a] complaint has facial plausibility when there is enough factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *Iqbal*) (internal quotation marks omitted).

Also, "[a] Rule 12(b)(6) motion should not be used to address credibility or proof issues in a complaint. *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 556 (2007); *Jackson v. Birmingham Bd.*, 544 U.S. 167, 184 (2005); *Morganroth & Morganroth*

*v. Norris, McLaughlin*, 331 F.3d 406, 416 (3d Cir. 2003). The Court must view the facts presented and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).

The Court of Appeals has cautioned—as did *Iqbal*–that the standard "does not impose a probability requirement at the pleading stage, but **instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."** *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (internal quotation marks omitted and emphasis added).

Applying that standard, the well-pleaded facts, together with the reasonable inferences favorable to Plaintiff drawn from those facts, establish the elements of the claims against the Defendants. Therefore, Defendants' Motions should be denied.

If, however, this Court were to conclude that some deficiency exists, Plaintiff should be permitted to amend. As has been explained:

> When a claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), leave to amend and reassert that claim is ordinarily granted. *In re Burlington Coat Factory Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). A claim may be dismissed with prejudice, however, if amending the complaint would be futile. *Id.* "Futile," as used in this context, means that the complaint could not be amended

to state a legally-cognizable claim. *Id.* (citing *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996)).

*Burrell v. DFS Servs., LLC,* 753 F. Supp. 2d 438, 444 (D.N.J. 2010).

Browne can readily cure any problems with the Complaint by pleading additional facts if the Court so requires.

### 3   CONCLUSION

For the foregoing reasons, the Court should deny the motions to dismiss for all Defendants, or grant dismissals without prejudice and grant leave to amend the complaint so that the Plaintiff can seek redress on behalf of himself and other New Jersey consumers and the lawsuit can proceed.

Respectfully submitted,

KIM LAW FIRM LLC

*s/Yongmoon Kim*
Yongmoon Kim

DATED: November 28, 2023