CLOSING

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

April 30, 2024

VIA ECF

**LETTER ORDER**

Re:     **Lesroy E. Browne, on behalf of himself and those similarly situated
v. National Collegiate Student Loan Trust, et al.
No. 22-2713**

Dear Litigants:

Before the Court are the following Motions to Dismiss Lesroy E. Browne's ("Plaintiff") First Amended Class Action Complaint (the "Amended Complaint"), ECF No. 1.1: (1) The Trust Defendants' Motion, ECF No. 44;[1] (2) Defendant U.S. Bank National Association's ("U.S. Bank") Motion, ECF No. 46; (3) Defendant Transworld Systems Inc.'s ("TSI") Motion, ECF No. 43; and (4) Defendant Wilmington Trust Company's ("Wilmington," and collectively, "Defendants") Motion, ECF No. 45.[2]  Plaintiff opposes all Motions.  ECF No. 58.  For the reasons explained below, all Motions are **GRANTED**.

    **I.    BACKGROUND**
          **A.  Factual Background**

In 2007, Plaintiff entered into a student loan agreement with JP Morgan Chase Bank (the "Loan").  Am. Compl. ¶ 84.[3]  The Loan was serviced by non-party Pennsylvania Higher Education Assistance Agency d/b/a American Education Services ("AES").  Id. ¶¶ 1, 4, 7, 45.2.  Plaintiff

---

[1] The "Trust Defendants" consist of National Collegiate Student Loan Trust I (incorrectly named as "National Collegiate Master Student Loan Trust a/k/a National Collegiate Master Student Loan Trust I"), National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3 and National Collegiate Student Loan Trust 2007-4 (collectively, the "Trust Defendants"). In the Amended Complaint, "NCT" or "NCSLT" refer to the Trust Defendants.  Am. Compl. ¶¶ 4, 72.

[2] In its Motion, Wilmington incorporates by reference the entirety of the Trust Defendants' Motion.  See Wilmington Br., ECF No. 45.1, at 1.

[3] The Amended Complaint contains misnumbered paragraphs. After ¶ 46, the paragraphs restart at ¶ 40.  The Court therefore refers to the first set of these paragraphs as 40.1–46.1 and the second set as 40.2–46.2.

alleges that in 2017, he asked AES to identify the current creditor of the loan, to which AES communicated that "NCT" owned the loan. Id. ¶ 2, 86–87. Between 2017 and 2020, Plaintiff made payments "pursuant to AES's communications that represented [the Trust Defendants] were entitled to collect . . . ." Id. ¶ 86. Apparently, Plaintiff paid his loans in full, and there is no allegation that the Trust Defendants failed to properly credit any payments made by Plaintiff. He now claims that the communications with AES were false—in other words, that there was no proof that the Trust Defendants owned the Loan—and that AES had no right to collect payment from him. Id. ¶¶ 2–3, 139. Plaintiff also alleges that, even if the Trust Defendants were the true owners of the Loan, they did not have proper licensure to collect from Plaintiff. Id. ¶¶ 88–92.

### i. The Trust Defendants

The Trust Defendants allegedly purchase, take assignment of, and enforce student loan credit accounts originally extended by other creditors. Id. ¶¶ 74–76. Plaintiff claims that the Trust Defendants "cannot show that they are assignees of any particular loan and instead use false or misleading statements in the course of their collection efforts . . . ." Id. ¶ 79. Plaintiff also maintains that pursuant to the New Jersey Consumer Finance Licensing Act, N.J.S.A. 17:11C-1, et. seq. (the "CFLA"), the Trust Defendants were not properly licensed to collect on the Loan at issue. Id. ¶¶ 88–92.

### ii. U.S. Bank

U.S. Bank serves as the Special Servicer of the Trust Defendants and is thus "responsible for the collection of the loans allegedly held by the [Trust Defendants.]" Id. ¶¶ 41.1–42.1. Plaintiff alleges that U.S. Bank, among other things, retains and audits debt collection agencies known as "subservicers" to "enforce and collect delinquent and defaulted student loans." Id. ¶ 46.1. Plaintiff claims that U.S. Bank "has allowed collection of loans in New Jersey when the actors are not properly licensed to engage in the lending business and servicing of student loans to be done without proper licensing of entities required to be licensed." Id. ¶ 40.2.

### iii. TSI

TSI is a debt collection agency used by the Trust Defendants. Id. ¶ 7. As a "special subservicer," TSI allegedly oversees student loans that go into default. Id. ¶ 54. Plaintiff claims that TSI violated the CFLA and New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et. seq. (the "CFA"), because it "acted as a student loan servicer for the [Trust Defendants] without a license when a license was required." Id. ¶ 83; see also id. ¶¶ 78, 133, 139.

### iv. Wilmington

Wilmington serves as Owner Trustee for the Trust Defendants. Id. ¶ 22. Plaintiff alleges that Wilmington acts on behalf of investors and "depends on collections being made of the student loans allegedly acquired by the [Trust Defendants]." Id. Plaintiff alleges that, along with the other defendants, Wilmington violated the CFLA "by making false or misleading communications that [the Trust Defendants] had acquired the loans of the Plaintiff" and permitting TSI to act as a student loan servicer without a license to do so. Id. ¶ 133.

Plaintiff brings three causes of action against all Defendants: (1) a request for declaratory judgment and injunctive relief for violations of the CFLA (Count I); (2) violations of the CFA (Count II); and (3) unjust enrichment (Count III). Id. ¶¶ 112–149.

### B. Procedural History

On April 21, 2021, Plaintiff filed a putative class action complaint in New Jersey state court against unknown entity "National Collegiate Student Loan Trust." See Browne v. Nat'l Collegiate Student Loan Tr., HUD-L-001598-21 (N.J. Super. Ct.). The Trust Defendants removed the action to the New Jersey District Court under the Class Action Fairness Act ("CAFA") and moved to dismiss. See Browne v. Nat'l Collegiate Student Loan Tr., No. 21-11871 (D.N.J.) ("Browne I"), ECF Nos. 1, 14. On December 22, 2021, the District Court dismissed Plaintiff's complaint without prejudice, finding that Plaintiff failed to sufficiently allege concrete injury and that the CFLA does not confer a private right of action. See Browne I, No. 21-11871, 2021 WL 6062306, *3–4 (D.N.J. Dec. 22, 2021). The District Court then remanded the action to New Jersey state court. Browne I, ECF No. 43.

On April 21, 2022, Plaintiff filed his Amended Complaint in state court against the Trust Defendants, U.S. Bank, TSI, and Wilmington. See ECF No. 1.1. On May 9, 2022, Defendants removed the action pursuant to CAFA, and on June 8, 2022, Plaintiff moved to remand. ECF Nos. 1, 17. On March 9, 2023, the District Court remanded the action due to lack of Article III standing. ECF Nos. 35–36. On August 1, 2023, the Third Circuit vacated the District Court's remand order, finding that the Amended Complaint alleges a concrete injury in fact under Article III. Browne v. Nat'l Collegiate Student Loan Tr., No. 23-2017 (3d Cir.), ECF No. 31. Upon remand back to the District Court, the instant motions followed.

## II. LEGAL STANDARD

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted). To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III. ANALYSIS[4]
### A. Count I: CFLA Claim

Defendants argue that Count I should be dismissed because the CFLA does not confer a private right of action. See Trust Defs. Br. at 12; U.S. Bank Br. at 14; TSI Br. at 16. Alternatively, they argue that the CFLA is inapplicable here because the statute pertains only to consumer lenders

---

[4] Defendants argue that as an initial matter, they are improper parties in this action. See Trust Defs. Br., 44.1, at 8–11; U.S. Bank Br., ECF No. 46.5, at 10–14; TSI Br., ECF No. 43.1, at 7, Wilmington Br. at 7–11. The Court will consider those arguments—to the extent they are relevant to the causes of action— in Sections A, B, and C.

or sales finance companies. Trust Defs. Br. at 14–18; U.S. Bank Br. at 14–15; TSI Br. at 18–19. The Court agrees.

The CFLA requires certain entities to obtain a license before conducting business. See N.J.S.A. 17:11C-3. As the District Court has previously held, the CFLA does not provide a private right of action, see Brown I, 2021 WL 6062306 at *3–4 (citing Veras v. LVNV Funding, LLC, No. 13-1745, 2014 WL 1050512, at *7–9 (D.N.J. Mar. 17, 2014)). Nor does the CFLA imply a private right of action. See Veras, 2014 WL 1050512, at *8–9 (assessing the legislative history). Therefore, Plaintiff cannot bring a cause of action pursuant to the CFLA.

Plaintiff suggests that Defendants' alleged violation of the CFLA need not be a standalone claim, but rather can serve as the basis for his CFA claim. Opp'n. at 29–31. That theory also fails. The CFLA states that "no person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act." N.J.S.A. 17:11C-3. Defendants do not fall into the categories of a consumer lender or sales finance company as those terms are defined in the statute.[5] See Trust Defs. Br. at 14–18 (explaining that the Loan at issue here does not constitute a "note," "retail charge account," or "retail installment contract" as defined under the statute); U.S. Bank Br. at 15–16 (explaining that U.S. Bank is a "depository institution" as defined by N.J.S.A. 17:11C-6, and thus exempt from CFLA requirements); TSI Br. at 18–19 (same as Trust Defendants). Therefore, they cannot be subject to the licensure requirements set forth in the CFLA. Accordingly, the Court dismisses Count I of the Amended Complaint with prejudice, as any further amendment would be futile.

### B. Count II: CFA Claim

Defendants argue that Count II should be dismissed because (1) the CFA applies to the sale of merchandise, not debt collection efforts; and (2) Plaintiff has not adequately plead fraudulent misrepresentations or unconscionable business practices. Trust Defs. Br. at 21; U.S. Bank Br. at 16; TSI Br. at 21. The Court agrees.

The CFA concerns fraud in connection to the sale of merchandise or real estate.[6] N.J.S.A. 56:8-2. Debt collection on behalf of third parties, however, does not fall within the ambit of the

---

[5] The CFLA defines "consumer lender" as, among other things, (1) "[in] the business of making loans of money, credit, goods or things in action, which are to be used primarily for personal, family or household purposes" and be "charging, contracting for, or receiving a greater rate of interest, discount or consideration therefor than the lender would be permitted by law to charge if he were not a licensee hereunder," or (2) "in the business of buying, discounting or endorsing notes . . . in amounts of $50,000 or less." N.J.S.A. § 17:11C-2. Moreover, New Jersey courts have held that "notes" are distinct from "debts." Woo-Padva v. Midland Funding LLC, No. BER-L-003625-17, 2022 WL 267938, at *2 (N.J. Law Div. Jan. 7, 2022).

The statute also defines "sales finance company" as, among other things, "in the business of acquiring or arranging for the acquisition of retail installment contracts or obligations incurred pursuant to retail charge accounts by purchase, discount, pledge or otherwise from a retail seller . . . and any person other than a retail seller who enters into a retail charge account with a retail buyer." N.J. Stat. Ann. § 17:16C-1(f).

[6] The CFA applies to practices "in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid." N.J.S.A. 56:8-2. The CFA defines "merchandise" as "any

CFA. See Ogbin v. GE Money Bank, No. 10-5651, 2011 WL 2436651, at *3 (D.N.J. June 13, 2011) (dismissing Plaintiff's CFA claim because "the Act does not apply to a debt collector's efforts to collect a debt"); see also Boyko v. American Intern. Group, Inc., No. 08-2214, 2009 WL 5194431, *4 (D.N.J. 2009) ("mere debt collection efforts on behalf of a third party . . . is not itself a sale of merchandise."); DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 64 A.3d 579, 588 (N.J. Sup. Ct. App. Div. 2013) ("Debt collection activities on behalf of a third party who may have sold merchandise are not unconscionable activities 'in connection with the sale' of merchandise."). Because TSI and U.S. Bank are allegedly in the business of servicing or collecting debt on behalf of the Trust Defendants, see Am. Compl. ¶¶ 41.1–42.1, 54, their conduct does not fall within the purview of the CFA.[7]

Moreover, Plaintiff fails to plead that Defendants made a fraudulent representation or committed an unconscionable commercial practice in violation of the CFA.[8] See N.J.S.A. 56:8-2. To the extent Plaintiff complains about the correspondence in 2017 in which he was told that "NCT" owned the loan, Am. Compl. ¶ 86, that representation was made by AES, not any of the named defendants. Moreover, as discussed above, any theory that rests on Defendants' licensing and the CFLA necessarily fails. Accordingly, the Court dismisses Count II of the Amended Complaint with prejudice, as any further amendment would be futile.

### C. Count III: Unjust Enrichment

Finally, Defendants argue that they did not receive an unjust benefit from Plaintiff that could allow his unjust enrichment claim to proceed. The Court agrees.

A plaintiff alleging unjust enrichment must plead facts showing that "(1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for defendant to retain [the] benefit without paying for it." Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 505 (D.N.J. 2009). Further, "[t]he unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or

---

objects, goods, commodities, services, or anything offered directly or indirectly to the public for sale." N.J.S.A. 56:8-2.15.

[7] Plaintiff argues that the Trust Defendants are liable under the "subsequent performance" provision of the CFA. Opp'n at 16. As an initial matter, there is a distinction between a "debt buyer"—a purchaser or assignee of defaulted debt—and an assignee of non-defaulted debt. Chulsky v. Hudson Law Offices, P.C., 777 F. Supp. 2d 823, 835–43 (D.N.J. 2011). While the former is not subject to the CFA, see id., the latter may be subject to the CFA's "subsequent performance" provision. See Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 538 (App. Div. 2008) ("an assignee . . . may be liable under the CFA for its own unconscionable commercial practices and activities related to its repossession and collection practices in connection with the subsequent performance [of the assigned contract].). But even if the CFA extends to the Trust Defendants'—assignees of Plaintiff's non-defaulted debt—Plaintiff fails to allege any fraudulent or unconscionable conduct in violation of the statute.

[8] A CFA claim based in fraud is subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), but a CFA claim based on "unconscionable commercial practices" is subject only to the baseline requirements under Federal Rule of Civil Procedure 8. See Katz v. Live Nation, Inc., No. 09-3740, 2010 WL 2539686, at *5 (D.N.J. June 17, 2010); see also Ciser v. Nestle Waters North Am., Inc., 596 Fed. Appx. 157, 162 n.6 (3d Cir. 2015).

conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994).

Plaintiff fails to allege that his payments to the Trust Defendants were unjust. Plaintiff's requested relief is based on the theory that the Trust Defendants collected loan payments from him without proof of ownership. Am. Compl. ¶¶ 48, 51. The Trust Defendants maintain that ownership of the Loan was properly transferred to the 2007-1 Trust and "there is nothing unjust alleged about the 2007-1 Trust having collected on Plaintiff's Loan." Trust Defs. Br. at 12; see also id. at 19 ("The 2007-1 Trust (a Delaware entity) purchased the pool of loans containing the Loan from The National Collegiate Funding, LLC (also a Delaware entity)."). Indeed, the Trust Defendants provide the Court with a copy of the Deposit and Sale Agreement, see ECF No. 44.2, which reflects that the Trust Defendants did obtain ownership of the Loan, see Trust Defs. Br. at 24 ("The 2007-1 Trust acquired Plaintiff's Loan in 2007 pursuant to a private contractual agreement (i.e., Deposit and Sale Agreement.").[9] Based on the foregoing, there is nothing unjust about the Trust Defendants receiving loan payments from Plaintiff.

Moreover, Plaintiff does not allege that U.S. Bank, TSI, or Wilmington received any benefit from Plaintiff's loan payments. The Amended Complaint contains no allegations that U.S. Bank collected any payments from Plaintiff or received an unjust benefit. See U.S. Bank Br. at 21. The same is true for TSI, an entity that services loans only if they are in default or become delinquent, see Am. Compl. ¶ 54, which is not the case here, see Browne I, 2022 WL 484954, at *1; Browne, No. 23-2017 (3d Cir.), ECF No. 31 at 3 (explaining that Plaintiff paid the Loan in full). Finally, there are no allegations that Wilmington collected from Plaintiff in any way—only the vague assertion that Wilmington's role as Owner Trustee "depends on" collections by the Trust Defendants. See Am. Compl. ¶ 22. Accordingly, the Court dismisses Count III of the Amended Complaint with prejudice, as any further amendment would be futile.

## IV. CONCLUSION

For the reasons stated above, the Trust Defendants' Motion (ECF No. 44), U.S. Bank's Motion (ECF No. 46), TSI's Motion (ECF No. 43), and Wilmington's Motion (ECF No. 45) are **GRANTED**. Plaintiff's Amended Complaint is dismissed with prejudice, and this case is hereby **CLOSED**.

SO ORDERED.

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[9] Generally, in ruling on a Rule 12 motion to dismiss, district courts "may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). Courts may, however, consider documents that are "integral to or explicitly relied upon in the complaint." Doe v. Princeton Univ., 30 F.4th 335, 342 (3d Cir. 2022) (quoting Doe v. Univ. of Scis., 961 F.3d 203, 208 (3d Cir. 2020)). The Court finds that the Deposit and Sale Agreement is integral to the Amended Complaint and therefore may be considered at this stage.